The Law Offices of Jason J. Rebhun, P.C.
*Attorneys for Plaintiff*
225 Broadway, 38th Floor
New York, NY 10007
(646) 201-9392
F: (646) 871-0035
Jason@jasonrebhun.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
HOUSE OF SALADS, LLC, Individually and on
behalf of all others similarly situated,

                Plaintiff,

      -against-

THE DEPENDABLE FOOD CORP. and
AAK FOOD CORP INC. a/k/a
OASIS FOODS,

                Defendant.
---------------------------------------------------------------X

Case No.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, HOUSE OF SALADS, LLC, by and through its counsel, the Law Offices of Jason J. Rebhun, P.C., brings this action on behalf of itself and all others similarly situated against Defendant The Dependable Food Corp. ("DFC") and Defendant AAK FOOD CORP INC. a/k/a OASIS FOODS ("Oasis"). Plaintiff makes the following allegations pursuant to the investigation of its counsel and based upon information and belief, except as to those allegations specifically pertaining to itself, which are based on personal knowledge.

**NATURE OF ACTION**

1. This is a class action lawsuit on behalf of purchasers of Defendants' containers/buckets of mayonnaise, which are individually labeled as containing a net weight of four (4) gallons of mayonnaise/512 fluid ounces {weighing thirty (30) pounds} and which are manufactured and

filled by Defendant AAK FOOD CORP INC. a/k/a OASIS FOODS ("Oasis") and then shipped to Defendant The Dependable Food Corp. ("DFC") for ultimate re-sale/re-shipment/distribution to various purchasing entities, including Plaintiff.

2. Plaintiff is in the wholesale food industry and sells readymade salads to commercial entities for resale to consumers.

3. Since approximately April 1, 2015, each week, Plaintiff purchased approximately one pallet containing sixty (60) buckets per pallet of the Defendants' four (4) gallon bucket of mayonnaise.

4. Independent testing by a laboratory retained by Plaintiff's counsel determined that each of the buckets of mayonnaise filled by Defendants and shipped to Plaintiff (and Defendant's other customers who purchased a similar four gallon bucket of mayonnaise) was underweight, under-filled, and thereby under-shipped.

5. Defendants are over-billing their customers by providing roughly 8% less mayonnaise than what they claim on their invoices.

6. The same laboratory tests revealed that Defendants' "30 lbs" bucket bearing a label stating "NET CONTENTS … 4 GAL (512 FL OZ)" weighed, on average, 27.84 pounds not including the bucket and 29.36 pounds including the bucket and contained, on average, 469 fluid ounces.

7. Upon information and belief, Oasis manufactures the subject mayonnaise and fills the buckets which are shipped to DFC. DFC then labels the individual buckets and ships them to its customers in the tri-state area.

8. Oasis' website claims that it fills "4 x 1 gallon jar" of its "extra heavy mayonnaise."

9. DFC's shipments of mayonnaise are shipped in buckets bearing a label which states that the net contents of the bucket are four (4) gallons of mayonnaise. The shipping invoice presented to the Plaintiff for signature with the shipments states the description of the mayonnaise as "MASBIA TUB MAYONNAISE (ROUND) 30 LBS."

10. For each bucket of mayonnaise shipped by Defendants, the delivered buckets were underfilled and thus substantially underweight. Random testing of DFC'S shipped buckets confirmed that DFC's buckets, in their original shipped condition, with the mayonnaise still inside the bucket, weighed in pounds (a) 29.56, (b) 29.54, (c) 29.18, (d) 29.20, (e) 29.62, and (f) 29.18 which is itself less than what the shipping label reflects and the actual weight of the volume of the mayonnaise contained in the bucket was considerably less (as much as twelve percent) than the 512 fluid ounces that the label claims is being shipped.

11. Laboratory testing of four other buckets revealed that the *bucket and product weight* was: (a) 29.61 pounds, (b) 29.16 pounds, (c) 29.50 pounds, and (d) 29.19 pounds. All four buckets weighed less than the claimed thirty pounds.

12. Laboratory testing of four other buckets revealed that the *product weight* was: (a) 28.08 pounds, (b) 27.63 pounds, (c) 27.97 pounds, and (d) 27.66 pounds.

13. Laboratory testing of four other buckets revealed that the *product volume* was: (a) 473 fluid ounces, (b) 466 fluid ounces, (c) 472 fluid ounces, and (d) 466 fluid ounces.

14. Defendants' shipping bucket, empty, weighs 1.54 pounds.

15. DFC's undershipment was confirmed by testing with a competitor's bucket which is also labeled as shipping thirty (30) pounds and the competitor's bucket, with the mayonnaise still inside and untouched, weighed 31.6 pounds.

16. Defendants are thus over billing purchasers by providing less mayonnaise than what they claim and less than what their purchasers are paying for.

17. Plaintiff asserts claims on its own behalf and a nationwide class of purchasers of DFC's bucket of mayonnaise which purport(s)(ed) to contain four (4) gallons of mayonnaise and those purchasers who were invoiced for a thirty (30) pound container, for breach of express warranty, breach of the implied warranty of merchantability, breach of the implied warranty of fitness for a particular purpose, unjust enrichment, violation of the New York General Business Law §§349, 350, New York Executive Law § 63 (12), New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*, 21 U.S.C.A. § 343 (misbranded food), negligent misrepresentation, and fraud.

### *Parties*

18. Plaintiff House of Salads LLC (HOSL) is a limited liability corporation with its principal place of business in Brooklyn, New York, is incorporated in New York, and is licensed to do business in New York. HOSL manufactures, makes, develops, cooks, prepares, and markets readymade salads to various commercial entities for resale to customers.

19. HOSL's members consist of Asher Ben-Tov, a New York resident.

20. Defendant The Dependable Food Corp. ("DFC") is a New Jersey corporation with its principal place of business and headquarters located in New Jersey.

21. DFC maintains a place of business and has its principal executive office at 29 Executive Avenue, Edison, New Jersey 08817. Its Chief Executive Officer is Sam Blau.

22. At all times hereinafter mentioned, DFC's salesman and point of contact with Plaintiff was Ari Wolner.

23. Defendant AAK FOOD CORP INC. (commonly known as "Oasis") is a New Jersey business corporation. Its principal place of business is located at 635 Ramsey Avenue, Hillside, New Jersey 07205.

24. Whenever reference is made in this Complaint to any representation, act, omission, or transaction of Defendants, that allegation shall mean that Defendants did the act, omission, or transaction through their officers, directors, employees, agents, and/or representatives while they were acting within the actual or apparent scope of their authority.

25. Plaintiff is a third-party beneficiary to the contract/agreement between Defendants.

26. Oasis' manufacturing and filling of the buckets/containers and the subsequent delivery of same to DFC for intentional resale to customers like Plaintiff, who, in turn, derive an immediate benefit therefrom, create(s)(d) an intended third-party beneficiary status to Plaintiff.

27. In underfilling the buckets, Defendants damaged Plaintiff which expected to receive a properly filled bucket to be used for resale as part of Plaintiff's products (salads) which it manufactures to its own customers.

### *Jurisdiction, Venue and Interstate Commerce*

28. The Court has subject matter jurisdiction pursuant 28 U.S.C. § 1332(d) ("Class Action Fairness Act") because, in part, this action is brought based on diversity of citizenship between the parties, and the aggregate amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and at least one member of the proposed class is a citizen of a different state than Defendants.

29. This Court also has diversity jurisdiction as the Plaintiff, a New York corporation, has claims against the Defendants, both of which are New Jersey corporations, and Plaintiff's damages exceed $75,000.

30. Additionally, and by no means of limitation, this Court also has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. §1367.

31. Pursuant to 28 U.S.C. §1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Plaintiff is a New York business corporation doing business in Brooklyn, New York and purchased the subject buckets from DFC in this District. Moreover, DFC distributed, sold, and shipped the subject buckets, which is the subject of the present complaint, in this District.

## CLASS REPRESENTATION AND ALLEGATIONS

32. Plaintiff seeks to represent a class defined as all persons/companies/entities in the United States who purchased the 30 lbs/4 gallon/512 fluid ounces buckets of mayonnaise (the "Class").

33. Plaintiff also seeks to represent a subclass of all Class members who purchased the subject 30 lbs/4 gallon/512 fluid ounces buckets of mayonnaise in New York (the "New York subclass").

34. Plaintiff also seeks to represent a subclass of all Class members who purchased the subject 30 lbs/4 gallon/512 fluid ounces buckets of mayonnaise in New Jersey (the "New Jersey subclass").

35. Plaintiff, like each potential class member, suffered damages of at least $75,000 in the form of underfilled shipments, Defendants' unjust enrichment by receiving full payment though filling/shipping/delivering less, and for the lost profits and revenues to Plaintiff and the other Class members.

36. Upon information and belief, Defendants' customers of the subject 4 gallon/512 fluid ounces bucket of mayonnaise number in the hundreds in the State of New York.

37. Upon information and belief, Defendants' customers of the subject 4 gallon/512 fluid ounces bucket of mayonnaise number in the hundreds in the State of New Jersey.

38. Defendants ship the subject buckets of mayonnaise to their customers in this District and the surrounding tri-state area, including to its customers in New Jersey, where Defendants are domiciled.

39. Defendants have engaged in the complained of behavior and potential Class members' claims for damages, in the aggregate, exceed $5,000,000. On their website, DFC states " Our warehouse is now open 24 hours a day, always ready to assist a customer in need, and our Truck Fleet, recently expanded and upgraded, runs night and day, ensuring our customers receive their orders when they need them."

40. Like Plaintiff, each of the potential Class members have suffered damages of at least $75,000 in the form of underfilled shipments, Defendants' unjust enrichment by receiving full payment though filling/shipping/delivering less, and for the lost profits and revenues to Plaintiff and the other Class members.

41. Members of the Class and Subclass are so numerous that their individual joinder herein is impracticable. Upon information and belief, members of the Class and Subclass number in the thousands. The precise number of Class members and their identities are unknown to

Plaintiff at this time but may be determined through discovery and are believed to be numbered in the hundreds but in no event less than one hundred customers/Class members. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third party retailers and vendors.

42. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to: whether Defendants' shipments of the subject buckets of mayonnaise labeled as 30 lbs/4 gallon/512 fluid ounces and shipped as "30 LBS." was underfilled and thus substantially underweight; whether Defendant warranted that the bucket of mayonnaise contained an adequate amount of mayonnaise for a four gallon bucket; whether Defendants breached these warranties; and whether Defendants committed statutory and common law fraud by doing so.

43. The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff purchased the 30 lbs/4 gallon/512 fluid ounces bucket of mayonnaise in reliance on the representations and warranties described above, and suffered a loss as a result of that purchase.

44. Plaintiff is an adequate representative of the Class and Subclass because its interests do not conflict with the interests of the Class members it seeks to represent, it has retained competent counsel experienced in prosecuting actions sounding in fraud, and who intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and its counsel.

45. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class and Subclass members. Each individual Class member

may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

46. If necessary, notice of this action may be affected to the proposed class in a manner provided in the Federal Rules of Civil Procedure, through contact information maintained in Defendants' records and through publication.

47. Unless an injunction is issued, Defendants will continue to commit the violations alleged herein, and the members of the proposed Classes and the general public will continue to be misled.

## COUNT I
### Breach Of Express Warranty

48. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

49. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

50. Defendants, as the manufacturer (Oasis), filler (Oasis), marketer (both Defendants), distributor (DFC), and seller (both Defendants) of the 30 lbs/4 gallon/512 fluid ounces bucket of mayonnaise, expressly warranted that the mayonnaise buckets contained 512 fluid ounces

9

of mayonnaise (four gallons worth) and the shipping invoice expressly warranted that Defendant DFC shipped a thirty (30) pound bucket of mayonnaise.

51. In fact, the mayonnaise is not fit for such purpose because each of those express warranties is false. Particularly, DFC underfills its containers which are substantially underweight and which do not contain the volume DFC claims it ships.

52. As a direct and proximate cause of Defendants' breach of express warranty, Plaintiff and Class members have been injured and harmed because: (a) they would not have purchased the buckets of mayonnaise on the same terms if the true facts were known concerning its quantity; (b) they paid a price premium for DFC's distributed mayonnaise due to its promises that it contained a specific amount of mayonnaise and a specific type of mayonnaise which is manufactured by Oasis; and (c) the mayonnaise contained within the bucket did not have the characteristics, ingredients, uses, benefits, or quantities as promises.

## COUNT II
### Breach of Implied Warranty of Merchantability

53. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

54. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendants.

55. Defendants, as the filler, marketer, distributor, and/or seller, impliedly warranted that the mayonnaise buckets contained 512 fluid ounces of mayonnaise (four gallons worth), DFC's shipping invoice expressly warranted that it shipped a thirty (30) pound bucket of mayonnaise, and that Oasis' website claims that it fills "4 x 1 gallon jar."

56. Defendants breached the warranty implied in the contract for the sale of the subject mayonnaise because it could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the goods were unfit for their intended and ordinary purpose because Oasis substantially underfilled the buckets which are obviously underweight and then delivered them to DFC for re-sale and distribution to its customers. As a result, Plaintiff and Class members did not receive the goods as impliedly warranted by Defendants to be merchantable.

57. Plaintiff and Class members purchased the mayonnaise from Defendants in reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose.

58. The buckets of mayonnaise were not altered by Plaintiff or Class members.

59. Oasis' distributed mayonnaise buckets were faulty when they left the exclusive control of Oasis.

60. DFC's distributed mayonnaise buckets were independently defective and faulty, after being labeled, when they left the exclusive control of DFC.

61. Defendants knew or should have known that the mayonnaise would be purchased and used without additional immediate testing by Plaintiff and Class members.

62. Defendants' mayonnaise was defectively prepared, filled, packaged, labeled, weighed, shipped and unfit for its intended purposes, and Plaintiff and Class members did not receive the goods as warranted.

63. As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiff and Class members have been injured and harmed because: (a) they would not have purchased the subject distributed mayonnaise on the same terms if the true facts were known concerning its quantity and weight and DFC's failure to comply with its label and shipping invoices,

together with various statutory requirements; (b) they paid a price premium for DFC's Masbia brand mayonnaise due to Defendant DFC's promises that it contained 512 fluid ounces of mayonnaise and weighed 30 pounds; (c) they paid a price premium for Oasis' mayonnaise due to Oasis' promises and representations that its buckets contained four gallons worth of mayonnaise; and (c) the mayonnaise contained within the bucket did not have the characteristics, ingredients, uses, benefits, or quantities as promised.

## COUNT III
### Breach Of Implied Warranty of Fitness for a Particular Purpose

64. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

65. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendants.

66. Defendants marketed, distributed, and/or sold the subject extra heavy mayonnaise buckets with implied warranties that they were fit for their intended purposes in that they contained what DFC's label and shipping invoice claimed it did: 512 fluid ounces and weighing 30 pounds. At the time that DFC sold the subject buckets, both Defendants knew or had reason to know that Plaintiff and Class members were relying on Defendants' skill and judgment to select and furnish a product that was suitable for sale.

67. Plaintiff and Class members purchased the subject buckets of mayonnaise in reliance upon Defendants' implied warranties.

68. The buckets of mayonnaise were not altered by Plaintiff or Class members.

69. As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiff and Class members have been injured and harmed because: (a) they would not have purchased

the subject distributed mayonnaise on the same terms if the true facts were known concerning its quantity and weight and DFC's failure to comply with its label and shipping invoices, together with various statutory requirements; (b) they paid a price premium for DFC's Masbia brand mayonnaise due to Defendant DFC's promises that it contained 512 fluid ounces of mayonnaise and weighed 30 pounds; (c) they paid a price premium for Oasis' mayonnaise due to Oasis' promises and representations that its buckets contained four gallons worth of mayonnaise; and (c) the mayonnaise contained within the bucket did not have the characteristics, ingredients, uses, benefits, or quantities as promised.

## COUNT IV
### Unjust Enrichment – as against Defendant DFC

70. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

71. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant DFC.

72. Plaintiff and Class members conferred benefits on Defendant DFC by purchasing the subject Masbia brand buckets of mayonnaise.

73. Defendant DFC has been unjustly enriched in retaining the revenues derived from Plaintiff and Class members' purchases of the subject Masbia brand buckets of mayonnaise. Retention of those moneys under these circumstances is unjust and inequitable because Defendant DFC misrepresented that the subject Masbia brand buckets of mayonnaise contained 512 fluid ounces and weighed 30 pounds. These misrepresentations caused injuries to Plaintiff and Class members because they would not have purchased the subject Masbia brand buckets of mayonnaise if the true facts were known.

74. Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and Class members is unjust and inequitable, Defendant DFC must pay restitution to Plaintiff and Class members for its unjust enrichment, as ordered by the Court.

## COUNT V
### Negligent Misrepresentation

75. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

76. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendants.

77. As discussed above, Defendants misrepresented that the subject buckets of mayonnaise contained the weight that they claimed it did. Defendant had a duty to disclose the true information that it was shipping underweight and under-filled containers.

78. At the time Defendants made these representations, Defendants knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

79. At an absolute minimum, Defendants negligently misrepresented and/or negligently omitted material facts about the subject buckets of mayonnaise.

80. The negligent misrepresentations and omissions made by Defendants, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase the subject buckets of mayonnaise.

81. Plaintiff and Class members would not have purchased the subject buckets of mayonnaise if the true facts had been known.

82. The negligent actions of Defendants caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT VI
### Fraud

83. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

84. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

85. As discussed above, Defendants provided and made available to Plaintiff and Class members with false or misleading material information and failed to disclose material facts about the subject buckets of mayonnaise, including but not limited to the fact that it contained inadequate amounts of mayonnaise. These misrepresentations and omissions were made with knowledge of their falsehood.

86. The misrepresentations and omissions made by Defendants, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase the Masbia brand mayonnaise buckets.

87. The fraudulent actions of Defendants caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT VII
### Violations of General Business Law §349

88. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

89. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

90. As stated herein, Defendants repeatedly misrepresented the amount it shipped in the Masbia brand mayonnaise buckets together with its misrepresentation as to the true weight of the bucket.

91. General Business Law §349 prohibits deceptive acts or practices in the conduct of any business.

92. Defendants' actions were aimed at the public as its business readily deals with the public.

93. Defendants engaged in a plethora of deceptive acts, misrepresentations, concealments, as stated in detail herein.

94. General Business Law §349 permits the Court to award Plaintiff statutory fees together with recovery of its attorneys fees hereunder due to Defendants' egregious scheme as stated herein.

95. The fraudulent and deceptive actions of Defendants caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

### COUNT VIII
**Violations of New York Executive Law § 63 (12)**

96. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

97. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendants.

98. Pursuant to New York Executive Law § 63 (12), the Attorney General may apply, in the name of the People of the State of New York, to the Supreme Court of the State of New York

for an order enjoining the continuance of such business activity or of any fraudulent or illegal acts, directing restitution and damages and, in an appropriate case, cancelling any certificate filed under and by virtue of the provisions of section four hundred forty of the former penal law or section one hundred thirty of the general business law, and the court may award the relief applied for or so much thereof as it may deem proper.

99. The misrepresentations and omissions made by Defendants, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to defraud and actually caused damages to Plaintiff and Class members thereby triggering the application of New York Executive Law § 63 (12).

100. Plaintiff and the Class members therefore pray for a referral/appointment/order to the Attorney General of the State of New York to enjoin the continuance of Defendants' fraudulent business.

## COUNT IX
**Violations of 21 U.S.C.A. § 343 (Misbranded Foods) and Fair Packaging and Labeling Act, section 1451 et seq. of Title 15**

101. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

102. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendants.

103. The fraudulent actions of Defendants violated both the Fair Packaging and Labeling Act, section 1451 et seq. of Title 15 and 21 U.S.C.A. § 343, as its label does not accurately state the net weight of its contents which must truthfully advise of same.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

a. For an order certifying the nationwide Class and the Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass members;

b. For an order declaring the Defendant's conduct violates the statutes referenced herein;

c. For an order finding in favor of Plaintiff, the nationwide Class, and the Subclass on all counts asserted herein;

d. For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

e. For prejudgment interest on all amounts awarded;

f. For an order of restitution and all other forms of equitable monetary relief;

g. For injunctive relief as pleaded or as the Court may deem proper; and

h. For an order awarding Plaintiff and the Class and Subclass its reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of all issues so triable.

Dated: February 7, 2016
       New York, NY

                                        Yours, etc.

                                        ***Jason J. Rebhun***
                                        LAW OFFICES OF JASON J. REBHUN, P.C.
                                        *Attorneys for the Plaintiff*
                                        225 Broadway, 38th Floor
                                        New York, NY 10007
                                        (646) 201-9392
                                        Jason@jasonrebhun.com

STATE OF NEW YORK )
                  ) ss.:
COUNTY OF KINGS   )

ASHER BEN-TOV, being duly affirmed/sworn, deposes and says:

Deponent is a member of the plaintiff limited liability company in the within action and has read the foregoing

Verified Complaint

and knows the contents thereof; that the same are true to deponent's own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters, deponent believes them to be true.

X _____
ASHER BEN-TOV

Affirmed/Sworn to me this

8th day of February, 2017

_____
Notary Public

JASON REBHUN
NOTARY PUBLIC-STATE OF NEW YORK
No. 01RE6121409
Qualified in Rockland County
My Commission Expires January 18, 20 21